Case 1:23-mj-00112-RMM   Document 1-1   Filed

Case: 1:23-mj-00112
Assigned to: Judge Meriweather, Robin M.
Assign Date: 6/2/2023
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, Melissa Bridges, is a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) assigned to the Joint Terrorism Task Force (JTTF). In my duties as a TFO, I conduct investigations into domestic terrorism and international terrorism. As a TFO, I gather evidence, collect and share intelligence, and respond to threats and incidents. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a TFO, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### Identification of Cameron Campanella II

Since January 6, 2021, the FBI has been investigating and identifying those who were inside of the Capitol without authority and disrupted the proceedings. During that investigation, the FBI learned that, according to records obtained through a search warrant served on Google, a mobile device associated with Google account cameroncampanellaXX@XXXXX.com (the subject account) was present at the U.S. Capitol on January 6, 2021.

Google estimates device location using sources including GPS data and information about nearby Wi-Fi access points and Bluetooth beacons. This location data varies in its accuracy, depending on the source(s) of the data. As a result, Google assigns a "maps display radius" for each location data point. Thus, where Google estimates that its location data is accurate to within 10 meters, Google assigns a "maps display radius" of 10 meters to the location data point. Finally, Google reports that its "maps display radius" reflects the actual location of the covered device approximately 68% of the time.

Google records showed that the mobile device associated with the subject account was present at the locations illustrated in Image 1, below. The mobile device was within the U.S. Capitol at locations reflected by some of the darker blue circle in Image 1, below, with the "maps display radius" reflected by a lighter blue ring around some of the darker blue circles. As illustrated in Image 1, the listed locations encompass areas that are at least partially within the U.S. Capitol Building between approximately between approximately 2:21 PM and 3:01 PM (EST) on January 6, 2021. In addition, as illustrated in Image 1, the listed locations were entirely within areas of the U.S. Capitol Grounds which were restricted on January 6, 2021.



*Image 1*: *A screenshot of the geolocation data for* the subject account between approximately 2:21 PM and 3:01 PM (EST) on January 6, 2021 showing the person in possession of the device associated with the subject account in or around the Capitol.

Legal process to Google identified the subscriber of the subject account as Cameron Campanella[1] and identified his residence at a specific address in York, Pennsylvania (the subject address).

On July 7, 2022, your affiant interviewed Campanella II in person at the Subject Address. The interview lasted approximately 10 minutes. Campanella II identified himself when federal agents asked to speak with him. Campanella II declined to talk about the events of January 6, 2021, but stated that he was "not scared" and expressed his view that investigating the January 6th riot was a waste of time.

<u>Campanella II's conduct on January 6, 2021</u>

The FBI reviewed open source videos and images, including videos on YouTube. Based on my interaction with and observation of Campanella II, described above, as well as by reviewing Campanella II's Pennsylvania driver's license photograph, I believe that Campanella II is the individual circled in Image 2 below, which appears to have been taken outside of the Capitol:

---

[1] Campanella II's father is also named Cameron Campanella ("Campanella I"). Campanella I does not reside at the subject address. I interviewed Campanella I at his home in York, Pennsylvania. Campanella I denied being at the Capitol on January 6, 2021. Based on my interaction with and observation of Campanella I, I believe that the individual circled in Images 2-4 below is not Campanella I.



**Image 2**: *A screenshot from a YouTube video[2] showing Campanella II (circled in red) outside of the Capitol on January 6, 2021.*

U.S. Capitol Police CCV video shows Campanella II entered the Capitol building through the Senate Wing Doors at approximately 3:00 PM, walked down a corridor, returned to the vicinity of the Senate Wing Doors, and left through the Senate Wing doors at approximately 3:01 PM:

---

[2] *Available at https://www.youtube.com/watch?v=tjXEtxdOpNA&t=820s* (last visited May 2, 2023).



*Image 3*: A screenshot from the Capitol's CCTV showing Campanella II (circled in red) in the Capitol in the vicinity of the Senate Wing Doors.



*Image 4*: A screenshot from the Capitol's CCTV showing Campanella II (circled in red) in the Capitol in the vicinity of the Senate Wing Doors.

Based on the foregoing, your affiant submits that there is probable cause to believe that Campanella II violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that Campanella II violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____
Melissa Bridges
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 2nd day of June 2023.

_____
ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE